UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL OUTLEY,

                    Plaintiff,

      v.

HONORABLE JUDGE GARY FEINERMAN,
CITY OF CHICAGO DEPARTMENT OF
WATER MANAGEMENT, SCOTT CROUCH,
JOHN CATALANO, RENA HONOROW, AND
ROBERT MUSSEN,

                    Defendants.

No. 22 C 05583

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Attorney Calvita Frederick ("Frederick"), as counsel for Plaintiff Michael Outley ("Plaintiff"), filed a Complaint for Declaratory Judgment against the judge (Hon. Gary Feinerman), defendants (City of Chicago Department of Water Management and Robert Mussen), and opposing attorneys (Scott Crouch, John Catalano, and Rena Honorow) from another case, *Outley v. City of Chicago*, No. 17 C 8633 (N.D. Ill.) ("*Outley II*"). The Complaint sought to collaterally attack Judge Feinerman's evidentiary rulings and the proceedings in that case. *See* R. 1.[1] After Judge Feinerman imposed sanctions on Frederick and dismissed *Outley II* with prejudice (*Outley II*, ECF No. 344), this Court *sua sponte* dismissed this case for lack of subject matter jurisdiction. *See* R. 16. Defendants Catalano, Crouch, Honorow, and

---

[1] Citations to the record in this case, *Outley v. City of Chicago*, 22 C 5583, are denoted by "R."

Mussen (collectively, the "Individual City Defendants") now seek sanctions against Frederick in this case under 28 U.S.C. § 1927. For the following reasons, that motion is granted, and Frederick is ordered to pay the reasonable attorneys' fees and costs incurred by the Individual City Defendants in defending against the frivolous Complaint filed in this action. Frederick is also referred to this District's Executive Committee for potential further action.

## Background

In order to understand the proceedings in this case and the basis for the instant motion for sanctions, it is necessary to recount a brief history of the underlying lawsuit that this case sought to attack.

### I.  *Outley II*

In 2017, Plaintiff brought claims against the City of Chicago (the "City") and Department of Water Management ("DWM") officials, including Defendant Mussen. Plaintiff alleged employment discrimination in violation of 42 U.S.C. §§ 1981 and 1983, Titles VI and VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, his union's collective bargaining agreement, and the *Shakman* Accord. His claims overlapped with a 2013 action that made similar claims against similar defendants, *Outley v. City of Chicago*, No. 13 C 1583 (N.D. Ill.) ("*Outley I*").[2]  After the court's rulings on a motion to dismiss and

---

[2] In *Outley I*, Plaintiff sued the City and various DWM officials for employment discrimination under §§ 1981 and 1983, Titles VI and VII, 42 U.S.C. §§ 2000d and 2000e, and Illinois law. The court granted summary judgment in favor of the defendants. 354 F. Supp. 3d 847 (N.D. Ill. 2019). In its opinion, the court noted its task was "made particularly difficult by Outley's counsel's failure to comply with

motions for summary judgment, all that remained of Plaintiff's case were his Title VII hostile work environment claim against the City and a § 1983 harassment claim against Defendant Mussen. *Outley II*, 407 F. Supp. 3d 752 (N.D. Ill. 2019) (granting in part the defendants' motion to dismiss on claim preclusion, untimeliness, and other grounds); *Outley II*, 2021 WL 4745393 (N.D. Ill. Oct. 12, 2021) (denying Plaintiff's motion for summary judgment in full and granting in part the defendants' motion for summary judgment). The court then set a trial date of September 23, 2022.

### a. Pre-Trial Misconduct

In the weeks leading up to trial in *Outley II*, Frederick engaged in what Judge Feinerman characterized as a "ceaseless barrage of meritless filings . . . designed to obtain a continuance of a trial that she was wholly unprepared to conduct." *Outley II*, ECF No. 344, at 3. Specifically, four weeks after the deadline to do so and Frederick's statements to opposing counsel that Plaintiff would not be filing motions *in limine*, Plaintiff moved for leave to file twenty motions *in limine*, which the court denied. *Id.* She also: unilaterally filed a pretrial order after refusing to collaborate with opposing counsel (the court entered defendants' pretrial order); made indecent remarks during the final pretrial conference ("it amazes me how in this . . . jurisdiction, . . . a judge can set a court case for a ruling and not be ready and kick it another two months, and that's just fine; but if a . . . counsel needs a couple of extra weeks, . . . they get ripped a new butthole,"); filed a motion after the pretrial conference and eight days before

---

Local Rule 56.1." *Id.* at 856. The Seventh Circuit affirmed the judgment earlier this year. *Outley v. City of Chicago*, No. 21-2476, ECF No. 44 (7th Cir. Feb. 13, 2023).

trial asking the court to take judicial notice of documents that were the subject of Plaintiff's unsuccessful motions *in limine* (which the court denied); criticized the court for not ruling on Plaintiff's motion for judicial notice less than an hour after it was fully briefed; mischaracterized the court's order granting and denying in part the defendants' motions *in limine*; and filed a motion the day before trial seeking to "renew" Plaintiff's responses to the defendants' motions *in limine* and Plaintiff's motion for judicial notice. *See id.* at 3–10 (providing an in-depth narrative of the listed events).

Most pertinent to this case, four days before trial in *Outley II*, Plaintiff filed a motion to "stay all proceedings in this case pending a ruling . . . on Plaintiff's forthcoming motion under 28 U.S.C. §§ 2201-2202 for Declaratory Judgment on Violation of Due Process Rights." *Outley II*, ECF No. 309. The motion explained that Plaintiff would be filing a separate action in this District seeking a declaratory judgment that Judge Feinerman's rulings in *Outley II* had violated Plaintiff's due process rights. *Id.* at 3. And Plaintiff argued that, once this threatened litigation was filed, Judge Feinerman would be required to recuse himself from *Outley II* because he would be an adverse party to Plaintiff. *Id.* at 2.

Judge Feinerman denied that motion during a hearing the following day, finding that a stay would prejudice the defendants and the court, and that the threatened declaratory judgment action was an obvious attempt to judge-shop. *Outley II*, ECF No. 316 at 25–31 ("[T]he obvious purpose of the motion to stay and the obvious purpose of the separate declaratory judgment suit is to prompt a recusal from [Judge

Feinerman] so the plaintiff and Ms. Frederick can try their hand with a new judge. And that is just not how things work."). Judge Feinerman further warned that an action for declaratory judgment against him would be meritless because collaterally attacking the evidentiary rulings in an ongoing case is "not a proper use of the declaratory judgment statute" and requests inappropriate retrospective relief. *Id.* at 28–29. He also advised that the proper forum for Plaintiff's objections to his rulings was an appeal. *Id.* at 30. Judge Feinerman then ordered Frederick to show cause why Rule 11 sanctions should not issue. *Id.* at 31. Despite these warnings, on the eve of trial, Plaintiff *again* filed an emergency motion to stay proceedings so that he could pursue the threatened declaratory judgment action, which the court again denied. *Outley II*, ECF Nos. 317, 337 at 12.

### b. Mistrial

Trial commenced on Friday, September 23, 2022, but lasted only two days. The court cut Frederick's opening statement short because she mentioned multiple times, even after a warning, a retaliation claim that had been dismissed at the summary judgment stage and a piece of evidence that the court had ruled should be previewed with the court outside the presence of the jury before its use. R. 344 at 12–13. Frederick at this point admitted to not having read the court's *in limine* order, despite her many written and oral criticisms of it. *Id.* During the defense's opening statement, Defendant Catalano alluded to a Glycol spill that occurred at the DWM and implied that Plaintiff was responsible. *Outley II*, ECF No. 337 at 59–60. Frederick objected on grounds of "falsity." *Id.* Judge Feinerman overruled her objection, explaining that

she could prove the statement's falsity through the evidence. *Id.* In the break over the weekend, Plaintiff filed a motion for a mistrial because of the Glycol statement, arguing that the statement was false, unfairly tainted the jury, and that if Defendant Mussen was going to testify that Plaintiff was responsible for the spill, he would commit perjury. *Outley II*, ECF No. 327. This motion was denied.

When trial started again the next Monday, Frederick continued to flagrantly disregard the court's *in limine* rulings, despite numerous warnings, by questioning Plaintiff about pieces of evidence and topics the court had either excluded or ruled must be previewed with the court outside the jury's presence before their admission. *Outley II*, ECF No. 344 at 15–17. The defendants made numerous motions for a mistrial. *Id.* When the second day ended, the court discussed the mistrial motions with the parties. *Id.* at 18. At this point, Frederick admitted that she was "physically, mentally, emotionally not up to [conducting the trial]." *Id.* The court noted that, instead of asking for a continuance for her health, which the court may have granted, she had instead threatened a declaratory judgment action in pursuit of a stay. *Id.* The next morning, the court declared a mistrial, finding that Frederick's multiple violations of the court's *in limine* orders and references to claims that had been dismissed made curative instructions inadequate. *Id.* at 19.

### c. Sanctions and Dismissal

Judge Feinerman next ordered that Frederick show cause as to why *Outley II* should not be dismissed, and the court should not impose sanctions against her. *Outley II*, ECF Nos. 333, 339 at 357–58. In his written order, he ordered Frederick to

6

address her "false or, at a minimum, recklessly incorrect representations that a declaratory judgment suit would shortly be filed against Judge Feinerman." *Outley II*, ECF No. 333 at 2. One day before she was to respond to this show cause order, Frederick filed the Complaint for declaratory judgment in this case, which is discussed further below. *See* R. 1. In her response to the show cause order, Frederick explained that the Complaint in this case "was not filed the week of the trial, when Plaintiff originally intended to file it, because Plaintiff's attorneys were extremely busy trying to protect Mr. Outley's case and constitutional rights as well as replying to the barrage of filings by Defendants which were obviously meant to keep Plaintiff's attorneys occupied with those responses instead of the Complaint." ECF No. 334 ¶ 16.

On December 30, 2022, in a 41-page order, the court dismissed *Outley II* with prejudice and imposed sanctions on Frederick. *Outley II*, ECF 344. The court emphasized the multiple instances of Frederick "engag[ing] in delay tactics and/or contumacious behavior," filing "frivolous," "meritless and contumacious" motions, and engaging in "unacceptable conduct." *Id.* at 24–28. The court determined that "Attorney Frederick's repeated violations of the court's rulings went beyond clumsy lawyering, and she acted in bad faith by recklessly making . . . frivolous [arguments]." *Id.* at 33 (internal quotation marks omitted). Specifically, the court addressed Frederick's argument that Judge Feinerman would have to recuse himself from *Outley II* because the Complaint in this case created a conflict. *Id.* at 38. The court ruled that this was "not supported by existing law or by a nonfrivolous argument for

7

modifying or augmenting existing law." *Id.* After reviewing Frederick's disciplinary history, the court concluded that "[d]ismissal with prejudice is a proportionate sanction given both the facts of the present case and Attorney Frederick's history of comparably substandard conduct." *Id.* at 35. Finally, the court referred her to the Executive Committee for potential discipline, given her violations of the Rules of Professional Conduct and the "many clients [that] have been harmed by Attorney Frederick's deficient representation in this and other cases." *Id.* at 40–41.

Plaintiff then filed a motion to amend or alter judgment. Because Judge Feinerman had, at this point, left the bench to pursue private practice, the case was reassigned to the Honorable Sharon Coleman. *Outley II*, ECF No. 350. Judge Coleman denied the motion to amend or alter judgment on May 19, 2023. *Outley II*, ECF No. 362.

## II. This Action

### a. The Complaint

On October 12, 2022, one day before she responded to Judge Feinerman's show cause order in *Outley II*, Frederick opened this case by filing an 86-page Complaint and over 1,000 pages of exhibits. *See* R. 1. The Complaint again asserted that its filing should force Judge Feinerman's recusal from *Outley II* such that he could not levy Rule 11 sanctions against her. *Id.* ¶¶ 58–66. The first two counts, against the Individual City Defendants and the City, alleged that they committed and conspired to commit fraud on the court when Defendant Catalano mentioned the Glycol spill and attributed it to Plaintiff during the defendants' opening statement. The third

count took issue with Judge Feinerman's rulings in *Outley II* and asserted they constituted an abuse of discretion.

Plaintiff sought 27 separate declaratory judgments. Plaintiff sought nine declaratory judgments that Judge Feinerman's evidentiary rulings in *Outley II* were incorrect and violated Plaintiff's constitutional rights to due process and a fair trial. *See id.* ¶¶ 137–145 (for example, asking this Court to "declare that the EEO policies are admissible under FRE 407 to show '*the feasibility of precautionary measures*'" (emphasis in original)). Plaintiff requested seven declarations that the Individual City Defendants committed and conspired to commit fraud on the court by bringing up the Glycol incident during opening statements and planning to testify that Plaintiff was responsible, despite allegedly obstructing discovery over the topic (something Plaintiff never brought to the court's attention during discovery), and that this also caused Plaintiff to suffer violations of his constitutional rights. *Id.* ¶¶ 146–152. Plaintiff sought two declarations that Judge Feinerman's decision to deny Plaintiff's motion for a mistrial and to grant Defendants' motion for a mistrial "violated Plaintiff's due process right to a fair and impartial arbiter . . . and a fair and impartial tribunal." *Id.* ¶¶ 153, 158. Four of the requested declarations related to Judge Feinerman's refusal to determine the falsity of the Glycol statement and his refusal to exclude Defendant Mussen's forthcoming testimony. *Id.* ¶¶ 154–157 (seeking, for example, a declaration that "Judge Feinerman's decision not to exclude Defendant Mussen's testimony regarding Mr. Outley's alleged responsibility [as to the Glycol spill] in essence green lighted Defendants' plan to put a witness on the

stand and let him perjure himself."). Finally, the Complaint sought a declaration that the issues raised in the Complaint "are not frivolous." *Id.* ¶ 159.

### b. Proceedings in this Case

Because of the Complaint's close connection to *Outley II*, this Court closely tracked *Outley II*'s docket. This Court became aware of Judge Feinerman's December 30, 2022 order dismissing *Outley II* with prejudice, and so entered a *sua sponte* order dismissing this case without prejudice for lack of subject matter jurisdiction on January 3, 2023. This Court explained:

> This Court has an obligation to police its subject matter jurisdiction *sua sponte. See Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005). Article III standing "requires that a party seeking to invoke the jurisdiction of the federal courts must present an 'actual case or controversy.'" *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000). Where a plaintiff seeks equitable relief, he "must show a significant likelihood and immediacy of sustaining some direct injury." *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000) (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210–11 (1995)). Because any allegedly wrongful conduct here by the defendants ended upon the dismissal with prejudice of the underlying action, there is no realistic threat of future harm to Plaintiff, and he lacks standing to bring this action. *Horton v. Marovich*, 925 F. Supp. 532, 539 (N.D. Ill. 1996) (dismissing case for lack of Article III standing where the plaintiff sought equitable relief against judge and parties in an underlying case and the underlying case had been dismissed).

R. 16. Then, on January 31, 2023, Outley filed a motion to alter or amend judgment, accusing the Court of making "manifest errors of both facts and law," arguing that *Outley II* was not over because a Rule 59(e) motion was still pending in that case, and implying that, because of the quick turnaround, "Judge Feinerman or someone on his behalf suggested to this Court that the Court no longer had jurisdiction on the declaratory action, [and so] we fear that this Court too might have – *unwillingly and*

*unwarily* – fallen victim of the same subtle machinations Mr. Outley and his attorney fell victims of during the pendency of *Outley II*." R. 21 ¶ 16 (emphasis in original). This Court summarily denied these arguments, denied having spoken to Judge Feinerman about the case, and explained that:

> This Court does its best to consistently adhere to the late Judge Shadur's advice to check for subject matter jurisdiction as "the first thing" when a complaint is filed and to judiciously police it at all times during a case. *See, e.g.*, *Del Estado v. Navistar Intern. Transp. Corp.*, 132 F. Supp. 2d 624, 625 (N.D. Ill. 1999) (quoting *Wisconsin Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986)). Though this case suffers from any number of fatal flaws, this Court selected the most efficient and judicious termination. That Plaintiff filed a Rule 59(e) motion in *Outley II* does not create standing here. Plaintiff plainly admits that he is seeking declaratory and injunctive relief that "certain rulings... issued by Judge Feinerman in *Outley II* violated Mr. Outley's due process rights." The Court cannot issue such retrospective declaratory or injunctive relief. *Outley II* is no longer assigned to Judge Feinerman, and thus there is no realistic threat of future harm to Plaintiff. More fundamentally, if a party believes a judge acted incorrectly or unfairly, the proper procedure is not to file new litigation against the judge, but rather, to file a motion to reconsider, and if denied, to file an appeal. Further, there is a proper procedure to deal with complaints of bias against a judge: file a petition for mandamus with the Court of Appeals prior to trial, or if after trial, include the complaint of bias in the appeal. This lawsuit is simply not the proper avenue for such issues to be resolved.

R. 22.

On February 2, 2023, the Individual City Defendants filed a motion for sanctions against Frederick under 28 U.S.C. § 1927. R. 23. They argue that, by the time this Court dismissed this action, they had already prepared their motions to dismiss and a motion for Rule 11 sanctions and incurred substantial legal fees. *Id.* at 6. On March 27, 2023, Frederick moved to withdraw as counsel for Plaintiff, R. 28, and filed a one-page response to the Individual City Defendants' motion that simply

stated, "[c]ounsel now understands the way to appeal or to challenge the decision of the Court is via appeal," and requested a settlement conference on the sanctions motion.[3] R. 30. This Court allowed Frederick to withdraw as Plaintiff's counsel with the understanding that she would still be defending against the sanctions motion, denied her request for a settlement conference, and gave Frederick another opportunity to file a substantive response to the sanctions motion. R. 34. The motion for sanctions became fully briefed on May 2, 2023. R. 37.

## Legal Standard

Under 28 U.S.C. § 1927, if an attorney "multiplies the proceedings in any case unreasonably and vexatiously," the court may require that attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[4] The requirement that the conduct be "vexatious" means that the attorney must have acted in bad faith rather than negligently. *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013). Bad faith can be demonstrated by intentional ill will or recklessness. *Id.*; *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1183–84 (7th Cir. 1992). Therefore, sanctions under § 1927 are proper when:

> an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice . . . ; pursued a claim that is without a plausible legal or factual basis and lacking in justification . . . ; or pursued a path that a

---

[3] In the telephone hearing on Frederick's motion to withdraw as Plaintiff's counsel, Plaintiff was confused that this case existed apart from *Outley II*.

[4] Federal courts also possess "inherent authority to sanction a litigant for bad-faith conduct . . . limited to the fees the innocent party incurred solely because of the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103–04 (2017).

reasonably careful attorney would have known, after appropriate inquiry, to be unsound.

*Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal quotations and citations omitted); *see also Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1081–82 (7th Cir. 2018).

## Discussion

### I. Sanctions under 28 U.S.C. § 1927

First, Frederick's action in filing the Complaint in this case unnecessarily multiplied the proceedings. Generally, a court cannot grant an award under § 1927 for the mere filing of a suit. *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 794 (7th Cir. 1983). And it is true that the only thing Frederick did in *this* case was file a Complaint and a motion to reconsider. But there is an exception: when an attorney initiates a lawsuit that is "without either a legal or factual basis and the attorney was or should have been aware of this fact," he or she may be held liable under § 1927. *Id.* And in such cases, sanctions may include fees and costs incurred "from the inception of the suit." *See Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708–09 (7th Cir. 2014) (affirming award under § 1927 for attorneys' fees incurred in responding to a complaint where the plaintiff "raised baseless claims" and demanded a "meritless 'emergency' discovery hearing"). Here, Plaintiff's claims had no legal basis and Frederick was aware of this fact, or at least, upon minimal legal research, should have been aware of this fact.

### A. The Complaint Was Meritless

Any reasonable inquiry into the law would have revealed that the declaratory relief sought in the Complaint was improper and devoid of merit.[5] *See Bell*, 908 F.3d at 1081–82. Citing *Boksa v. Keystone Chevrolet Co.*, 553 F. Supp. 958, 962 (N.D. Ill. 1982), Frederick argues that sanctions are not appropriate because Plaintiff's claims were weak but not totally meritless. But the inescapable conclusion is that her claims were frivolous at every turn. There was not even a "minimal question of . . . legal interpretation raised," *id.*, and the outcome should have been "obvious." *BLET GCA UP v. Union Pac. R.R. Co.*, 988 F.3d 409, 414 (7th Cir. 2021) (quoting *Arnold v. Villareal*, 853 F.3d 384, 389 (7th Cir. 2017)) (defining the word "frivolous").

Most fundamentally, each request for relief would have required this Court to take an appellate role over the rulings of another presiding district judge in a pending case. A federal district judge has no such concurrent authority to review another district judge's rulings. *See Parmalat Capital Fin. Ltd. v. Grant Thornton Int'l*, 756 F.3d 549, 552 (7th Cir. 2014) ("Federal district judges have appellate authority over decisions by magistrate judges, bankruptcy judges, and certain administrative law judges . . . , but not over decisions by other district judges."); *Tatum v. Cimpl*, No. 14-

---

[5] At first blush, it would appear that the doctrine of judicial immunity, which blocks all civil actions against judges for actions taken in the exercise of their judicial capacity, would apply to Plaintiff's claims against Judge Feinerman. *Mireles v. Waco*, 502 U.S. 9, 12 (1991). This doctrine applies even when the judge's action was "in error, . . . done maliciously, or . . . in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). But the Supreme Court has ruled, in no uncertain terms, that judicial immunity does not apply to actions seeking prospective equitable relief against a judicial officer. *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). Although this lawsuit is not barred by judicial immunity, it is nonetheless meritless for the reasons explained in this Opinion.

cv-690, 2016 WL 3963250, at *2 (W.D. Wis. July 21, 2016) (rejecting the plaintiff's claim seeking declaratory relief against a federal judge for actions in a pending case, finding that "it would be improper for a federal district court to entertain such a request" because there are "more effective remedies available," namely, an appeal); *see also Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1392–93 (9th Cir. 1987) ("To allow a district court to grant injunctive relief against . . . the district court in the underlying . . . case would be to permit, in effect, a 'horizontal appeal' from one district court to another . . . . Such collateral attacks on the judgments, orders, decrees or decisions of federal courts are improper."). How an attorney, especially one with years of experience litigating in federal court, would think that the proper way to challenge the evidentiary rulings of a district court judge is to sue that judge, rather than filing an appeal, is incomprehensible.

And even if it were proper for this Court to issue such declaratory relief, it should have been clear that Plaintiff could not qualify for the relief sought. For equitable relief, a plaintiff must show that he has "an inadequate remedy at law and [ ] a serious risk of irreparable harm" and that he is seeking "prospective" relief. *Pulliam v. Allen*, 466 U.S. 522, 537 (1984). Plaintiff could meet none of the requirements here. As already explained, he had an adequate remedy at law: filing an appeal (or a petition for mandamus during trial) to the Seventh Circuit. And there was no future risk of irreparable harm because Judge Feinerman had already made the rulings about which Plaintiff complained. Plaintiff sought retrospective declarations that past evidentiary rulings by Judge Feinerman were wrong and that

the Individual City Defendants committed fraud on the court in a trial that had already ended. *Johnson v. McCuskey*, 72 F. App'x 475, 477 (7th Cir. 2003) (dismissing request for declaratory judgment against judge's past actions because "[d]eclaratory judgments . . . are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."); *Horton*, 925 F. Supp. at 539 ("Federal courts do not, as a rule, enjoin conduct which has been discontinued with no real prospect that it will be repeated.").

In fact, such requests do not seek true declaratory relief and do not create a viable case or controversy. *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . ."); *Hansen v. Ahlgrimm*, 520 F.2d 768, 770 (7th Cir. 1975) (dismissing request for declaratory judgment that a judge's actions in an underlying case violated the law and the plaintiff's constitutional rights because it failed to present a live case or controversy) ("[W]e are not presented with a case in which declaratory judgment will serve some purpose, such as a declaration of the unconstitutionality of certain specifically enumerated statutes authorizing the complained of action."); *see also Johnson*, 72 F. App'x at 477 (holding that a plaintiff "is not seeking declaratory relief in the true legal sense" where the complaint asks the district court to "declare" that other federal judges "acted improperly in various ways when deciding [a] motion"); *Puchner v. Waukesha Cty. Cir. Ct.*, 992 F. Supp. 1061, 1063 (E.D. Wis. 1998) (dismissing claim for declaratory relief against a judge's actions taken in an underlying case because the "declaratory judgment he seeks

would serve no purpose."). Even a cursory search of case law on declaratory actions against judges would have made obvious that the Complaint was without merit.

### B. Complaint Was Filed in Bad Faith

Furthermore, Frederick acted in bad faith in filing the frivolous Complaint in this case. Frederick argues that she filed the Complaint to "address the perceived issues of the violation of Plaintiff's due process rights," R. 35 at 2, and that she "earnestly believed the complaint was not frivolous, nor without merit." *Id.* at 6. She also argues that the Individual City Defendants have not carried their burden to prove that she actually knew she was bringing a meritless claim.[6] But actual knowledge is not required to prove bad faith—rather, it can be proven by recklessness. *Kotsilieris*, 966 F.2d at 1183–84.

Further, Frederick fails to address the fact that Judge Feinerman explicitly warned her well before she filed the Complaint that the threatened declaratory judgment action was legally meritless. Judge Feinerman told Frederick that "the declaratory judgment [action] is meritless" because "it's not a proper use of the declaratory judgment statute." *Outley II*, ECF No. 316 at 28–29. Citing and quoting a decision by the Eighth Circuit Court of Appeals in *Justice Network, Inc. v.*

---

[6] Frederick cites two cases to support her contention that the party seeking sanctions must prove actual knowledge of frivolousness, *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329–31 (7th Cir. 1995), and *Fin. Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 532 (7th Cir. 1998). But the *Lorentzen* court discussed the standard for Fed. R. App. P. 38 sanctions, which is different than § 1927 sanctions. 64 F.3d at 329–31. And the court in *Geberet AG* found that sanctions were appropriate for a party that actually knew its claims were without merit. 165 F.3d at 532. This is one way, but not the exclusive way, to prove bad faith.

*Craighead Cty.*, 931 F.3d 753 (8th Cir. 2019), Judge Feinerman explained to Frederick that a plaintiff cannot seek the retrospective declaratory relief she described. *Outley II*, ECF No. 316 at 28–29. He also read to her the following direct quote from that case: "a complaint seeking a declaration of past liability against a judge instead of future rights does not satisfy the definition of declaratory judgment and renders declaratory judgment unavailable." *Id.*

Feinerman further directed her to the proper forum for raising her grievances against his rulings and the conduct of Defendants: "[i]f the plaintiff and plaintiff's counsel thinks that [the court] made mistakes in pretrial rulings or at trial, there's a well-worn avenue to get an audience to hear those arguments. It's called an appeal . . . ." *Id.* at 30. Finally, he explained, with multiple supporting legal citations, that her attempt to force him to recuse himself was not legally sound. *Id.* at 26–27. He extensively quoted and provided a citation to *In Re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005) to explain that there is no rule that requires a judge to automatically recuse him or herself when involved in litigation against a party because the Seventh Circuit wants to prevent "litigants [from] judge-shop[ping] by filing a suit against the presiding judge." He also quoted and cited *Sullivan v. Conway*, 157 F.3d 1092, 1096 (7th Cir. 1998), which similarly stated, "[i]t is improper for a lawyer or litigant to create the ground on which he seeks the recusal of a judge assigned to his case. This is errant judge-shopping."

In short, before filing the Complaint, Frederick knew that it impermissibly sought retrospective declaratory relief, that the proper path was to file an appeal, and

that her attempt to force Judge Feinerman's recusal from *Outley II* was meritless. Therefore, her contention that she only "now understands" she should have pursued an appeal falls flat. R. 30. At the very least, Judge Feinerman's warnings, with numerous citations to authority, should have at least prompted Frederick to pause and review the cases he cited to her before filing this suit. But she apparently did not and pressed ahead with filing the threatened action.[7] Neither the Complaint nor her opposition to the present motion attempted to distinguish the precedent cited by Judge Feinerman. Even *pro se* litigants have been sanctioned for similar conduct. *See Tartt v. Magna Health Systems*, No. 13-cv-8191, 2014 WL 4087220, at *4 (N.D. Ill. Aug. 19, 2014) (levying sanctions on *pro se* plaintiff who sued judges for their rulings in a prior suit despite warnings from the court that such claims are meritless).

Finally, the timing of the Complaint, which was filed three days after Judge Feinerman's show cause order, demonstrates an improper attempt to get Judge Feinerman to recuse himself from *Outley II* and to avoid sanctions in that case. Indeed, the Complaint alleges outright that its purpose is to avoid sanctions in the underlying suit—the irreparable harm it describes is the imposition of sanctions. R. 1 at ¶ 113 ("declarations that underscores [sic] the illegality of the conducts [sic], acts, and omissions Plaintiff complains of herewith will prevent Defendant Honorable Judge Feinerman from imposing any further sanctions on Plaintiff and his attorney

---

[7] Frederick cannot even say that her behavior was driven by client demands because Plaintiff apparently did not even know about the existence of this lawsuit. *See* footnote 3, *supra*. Of course, it is not an excuse for an attorney to file an improper lawsuit because the client insisted it be filed, but the Court notes that the filing of this case appears to have been an entirely lawyer-driven decision.

in the immediate term,") and ¶¶ 115, 121, 128, 135. And Judge Feinerman has already ruled that Frederick attempted to force his recusal in bad faith. *Outley II*, ECF 344 at 38. The timing of the Complaint (filed one day before her response to Judge Feinerman's show cause order) further shows that Frederick was attempting to rebut Judge Feinerman's characterization that her threats to file a declaratory judgment against him were "false or, at a minimum, recklessly incorrect." *Outley II*, ECF No. 333 at 2. In short, it seems she wanted to show him that she wasn't bluffing. The Court can therefore only reach one conclusion: Frederick acted in bad faith in filing the Complaint.

### C. Frederick's Disciplinary History

And finally, Frederick's extensive disciplinary history further supports sanctions. When determining whether sanctions are appropriate, a court is "entitled to examine, as one factor in its consideration, the modus operandi of the attorney as evidenced by her prior disciplinary history." *Fuery v. City of Chicago*, 900 F.3d 450, 467 (7th Cir. 2018) (explaining that an extensive past disciplinary history shows an "unwillingness to conform [one's] conduct to requirements laid down by judicial orders or rules of procedure [that] is unlikely to change unless courts respond firmly," (quoting *Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 909 (7th Cir. 2015))).

This case is not the first time that Frederick has accused a judge in this District of bias or wrongdoing when things have not gone her way, and then attempted to remove him or her from the case. *See Porch v. Univ. of Ill. at Chi., Sch. of Med.*, No. 21-cv-3848, 2023 WL 2429348, at *2 (N.D. Ill. 2023) (Dow, J.) (detailing how a motion

filed by Frederick accused the court of not reading an order it signed, and "littered" the brief "with other unnecessary potshots and hyperbole,"); *Mallory v. Rush Univ. Med. Ctr.*, 18 C 4364, 2021 WL 458547, at *6–7 (N.D. Ill. Feb. 9, 2021) (Ellis, J.) (describing Frederick's accusations that Magistrate Judge Kim's decisions stemmed from racial bias against her and her client and her threats to get Judge Kim "removed" from the bench); *Kuczaty v. Willowbrook Ford, Inc.*, No. 21 C 2551 (N.D. Ill.) (Ellis, J.), ECF No. 57 at ¶ 31 (a motion to recuse filed by Frederick, suggesting that Judge Ellis harbored racial "bias" against Frederick).

The Seventh Circuit has also found on multiple occasions that Frederick has asserted frivolous claims or used improper delay tactics. *See Abatangelo v. Wells Fargo Bank, N.A.*, 719 F. App'x 520, 524 (7th Cir. 2017) ("[W]e cannot resist adding that underneath all of this is an obviously frivolous complaint."); *Frederick v. Marquette Nat'l Bank*, 911 F.2d 1, 2 (7th Cir. 1990) (deeming the suit "frivolous" and "a complete waste of judicial effort" in finding that "the dismissal should have been based on frivolousness."); *Anderson v. United Parcel Serv.*, 915 F.2d 313, 315 (7th Cir. 1990) (upholding sanction of dismissal based on plaintiffs' use of "delaying tactics," "inadequate motions and briefs," and "noncompliance with court rules and orders.").

Other courts in this District have also sanctioned Frederick for similar conduct. *See Mallory*, 2021 WL 458547, at *21 (granting Rule 11 sanctions and dismissing case with prejudice because of Frederick's "clear record of delay and contumacious conduct,"); *Mallory*, 2020 WL 6152670, at *2 (N.D. Ill. Oct. 20, 2020) (imposing Rule 11 sanctions on Frederick for filing a "frivolous," "groundless," and

"not well-founded" motion to strike that "lacked evidentiary support"); *Frederick v. Easty*, 14 CV 342, 2015 WL 603884, *9–10 (N.D. Ill. Feb. 11, 2015) (imposing Rule 11 sanctions on Frederick because of "baseless," "false," and "objectively misleading" representations, and determining that "this lawsuit was presented for the improper purpose of causing unnecessary delay and needlessly increasing the cost of litigation."). That Frederick has an extensive history of similar litigation misconduct, for which she has been warned and sanctioned *ad nauseum*, evinces that she has a "serious and studied disregard for the orderly process of justice," and supports ordering § 1927 sanctions. *Jolly Grp.*, 435 F.3d at 720 (citations omitted). Therefore, Frederick shall be personally liable to the Individual City Defendants for their reasonable costs and attorneys' fees expended in preparing responses to the Complaint in this matter. The Individual City Defendants are ordered to follow the procedures in Local Rule 54.3 to confer with Frederick and submit a fee petition to the Court.

## II. Referral to Executive Committee

Though not requested by the Individual City Defendants, this Court also thinks it appropriate, given Frederick's conduct in *Outley II* and this case, as well as her extensive history of similar conduct, to refer her to this District's Executive Committee for further possible discipline under Local Rule 83.28. It is of utmost importance to the legal profession that members of the bar provide, at a minimum, competent, professional, and non-frivolous representation of their clients. Frederick has professional duties to do so. *See* Ill. R. Prof'l Conduct 1.1 Comment 5 (duty of

competent representation); Ill. R. Prof'l Conduct 3.1 Comments 1, 2 (duty not to make frivolous claims); Ill. R. Prof'l Conduct 3.2 Comment 1 (duty not to use dilatory practices to delay litigation); Ill. R. Prof'l Conduct 3.5 Comment 4 (duty of decorum). And she has flouted those duties time and time again. Frederick's clients ultimately suffer the consequences of her misconduct, while the consequences for her to date have been relatively minor.[8] Therefore, the Court refers Frederick to the Executive Committee for potential further action.

## Conclusion

For the foregoing reasons, the Individual City Defendants' motion for sanctions under 28 U.S.C. § 1927 (R. 23) is granted. Attorney Calvita Frederick is ordered to personally pay the Defendants' reasonable costs, expenses and attorneys' fees incurred in responding to the Complaint in this action. Frederick is also referred to the Executive Committee for further potential discipline. The Individual City Defendants are ordered to follow the provisions of Local Rule 54.3 to file a fee petition and supporting affidavits.

---

[8] *See Outley II*, ECF No. 344 at 41 ("Attorney Frederick has regularly proved herself to be a detriment to her clients—including here, where she has caused Outley to lose the opportunity to present a potentially winning case to a jury,"); *Mallory*, 2021 WL 458547, at *21 ("[T]he Court is cognizant that the offending conduct is primarily (and most likely exclusively) that of Mallory's counsel [Frederick], and not Mallory herself . . . . [T]he Seventh Circuit has made clear that an attorney's conduct may substantially harm a blameless client by causing her case to be dismissed."); *Anderson*, 915 F.2d at 315–16 (in dismissing a case because of Frederick's misconduct, noting that "[t]he plaintiff's most compelling argument for clemency is that the sins of their attorneys [Frederick] should not be visited upon them," but ultimately, "[t]he client picks the attorney and should be bound by that choice.").

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: June 22, 2023